IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH DAVIS, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) Case No. 12 -cv-01068-MJR |
|  | ) |
| DR. SHAH, | ) |
| DR. LARSON, | ) |
| DR. SCHMIDT, | ) |
| DR. GARCK[1], | ) |
| DR. BALER[2], | ) |
| BENTON, | ) |
|  | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Joseph Davis, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

---

[1] A review of the complaint and the medical records submitted by Plaintiff indicates that "Dr. Gark" is actually Dr. Garcia. Therefore, the Court will refer to Dr. Garcia.

[2] A review of the complaint and the medical records submitted by Plaintiff indicates that "Dr. Baler" is actually Dr. Baker. Therefore, the Court will refer to Dr. Baker.

1

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also* Fed.R.Civ.P. 8. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed, even if a savvy judge may think actual proof of those facts is improbable. *See Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Even under the generous standard of review that is applicable at this stage, upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A to summarily dismiss Plaintiff's claims.

1. The Complaint

Plaintiff's original complaint (Doc. 1) is the controlling pleading at this time. On January 3, 2013, Plaintiff submitted a proposed amended complaint, dismissing Dr. Schmidt as a defendant, and adding as a defendant Dr. Jon Doe, "Regional Medical Director at the Wexford Center," in his individual and official capacity (Doc. 8). The Court considers the amended complaint to be both a motion for leave to amend and the required proposed amended complaint. Still, the proposed amendment fails for procedural reasons, and because the proposed new claim fails as pleaded.

Amendment by interlineation is not permitted. In accord with Local Rule 15.1, an amended complaint must include all claims a plaintiff desires to pursue. Plaintiff's proposed amended complaint only describes the changes he desires to make to the original complaint (Doc. 1). For purposes of the threshold review and a complete analysis of the viability of Plaintiff's claims, the Court will address the allegations relative to Dr. Schmidt *and* Dr. Jon Doe, Regional Medical Director at the Wexford Center. It is apparent that these claims cannot be cured.

2. Deliberate Indifference Claims

Although at this juncture the Court is concerned with the mere plausibility of the claim, it is helpful to keep in mind the legal standard for the claims asserted. The Eighth Amendment to the Constitution prohibits cruel and unusual punishment. In the context of medical care for prisoners, cruel and unusual punishment occurs when a Defendant is deliberately indifferent to a serious medical need of a prisoner:

> A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett* [*v. Webster*]*,* 658 F.3d [742,] 750 [(7th Cir. 2011)]. Deliberate indifference is proven by demonstrating that a

prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Id.* at 751.

*Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir.2012). A condition can be considered serious if, without treatment, the plaintiff suffered " 'further significant injury or unnecessary and wanton infliction of pain.' " *Id.* Deliberate indifference does not encompass negligence or even gross negligence. *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir.2010). Deliberate indifference requires personal knowledge of an inmate's serious medical need and an intentional or reckless disregard of that need. *Id.; Hayes,* 546 F.3d at 524.

> Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment. See *Estelle* [*v. Gamble*]*,* 429 U.S. [97,] 106, 97 S.Ct. 285; *Estate of Cole v. Fromm,* 94 F.3d 254, 261 (7th Cir.1996). But a prisoner also is not required to show that he was literally ignored. *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir.2000). Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment. *Estelle,* 429 U.S. at 104 & n. 10, citing *Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974); *Johnson v. Doughty,* 433 F.3d at 1013 (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno,* 414 F.3d at 655 (noting that persistence in a course of treatment "known to be ineffective" violates the Eighth Amendment). A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain. *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir.2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days), citing *Gutierrez v. Peters,* 111 F.3d 1364, 1371-72 & n. 6 (7th Cir.1997) (collecting cases).

*Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Plaintiff alleges that Dr. Shah, Dr. Larson, Dr. Schmidt, "Dr. Baler" (who appears to really be Dr. Baker), and "Dr. Garck" (who appears to really be Dr. Garcia) failed to carry out medical orders, falsified medical records (to reflect that Plaintiff was physically examined by

4

Schmidt, Larson, Baker or Garcia)—all constituting deliberate indifference to a serious medical need, in violation of the Eighth Amendment. More specifically, Plaintiff alleges that on June 2, 2011, an outside G.I. specialist told him he would be referred for a colonoscopy, but the defendants denied the colonoscopy and it took until June 29, 2011, until Dr. Shah examined Plaintiff's rectum and diagnosed a small rectal prolapse. Although Plaintiff declined surgery to repair the prolapse, and it took until January 1, 2012, for Plaintiff to actually have a colonoscopy, Plaintiff does not appear to be claiming any constitutional violation for the period of time after the September 29, 2011, exam and diagnosis.

The medical records reflect that the outside G.I. specialist was Dr. Schmidt, and that Schmidt recommended (not ordered) a colonoscopy (Doc. 1-1, p. 1). That proposal was to be evaluated by Dr. Larson, Regional Medical Director; Larson's recommendation would then flow to Dr. Garcia (in collegial review) for a decision (Doc. 1-1, p. 2). The records confirm Plaintiff's assertion that Dr. Larson did not see or otherwise evaluate Plaintiff. However, on June 12, 2011, Dr. Garcia denied the colonoscopy due to a need for additional information; Dr. Larson was to evaluate Plaintiff and re-present the request, along with Dr. Larson's recommendation (Doc. 1-1, p. 27).

Plaintiff contends that he never saw Dr. Larson, and there are no records indicating otherwise. In any event, beginning June 30, 2012, by order of Dr. Shah, lab tests were run on blood and stool; H. Pylori was ruled out (a common cause for blood in the stool) (*see* Doc. 1-1, pp. 6-16). Plaintiff alleges and medical records confirm that he continued to experience pain and bleeding.

On September 29, 2011, Dr. Shah again recommended a colonoscopy (Doc. 1-1, p. 20).

5

On October 18, 2011, Dr. Shah called Dr. Schmidt and discussed Plaintiff's condition—they agreed that Plaintiff had a rectal prolapse (Doc. 1-1, p. 21). Dr. Baker, in collegial review, also agreed with the diagnosis (Doc. 1-1, p. 28). At this juncture, Dr. Baker, who was reviewing the appeal of the earlier denial of a colonoscopy, noted the new diagnosis and therefore affirmed the denial. In other words, the diagnostic colonoscopy was not needed, a surgical remedy was required.

On October 20, 2011, Dr. Shah secured approval for Plaintiff to be seen by Dr. Mutch, an outside colorectal surgeon (Doc. 1-1, p. 21). Dr. Mutch saw Plaintiff on December 1, 2011, and diagnosed a full-thickness rectal tear (Doc. 1-1, p. 32). Although a sigmoid resection was recommended, Plaintiff elected not to proceed with that remedy; rather, he opted to have only a colonoscopy (Doc. 1-1, p. 32). As a result, the colonoscopy was approved on December 12, 2011 (Doc. 1-1, p. 29). The colonoscopy was performed January 5, 2012, and the results were normal (Doc. 1-1, p. 33).

Plaintiff's alleged and documented pain and bleeding from June 2 through September 29, 2011, could form the basis for a constitutional claim. However, Plaintiff appears to have pleaded himself out of Court on his Eighth Amendment claims, many of which are obviously the product of misreading the medical records. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (even if a complaint passes the minimal threshold pleading standards, an inmate may still plead himself out of court by alleging facts or attaching documentation that preclude recovery).

The records show that Dr. Larson had no personal involvement. No records reflect that he examined Plaintiff, as Plaintiff asserts. Rather, Larson was listed as a doctor who

6

would be reviewing Plaintiff's case. (There is no evidence that Larson ever knew his recommendation was sought.)

Insofar as Plaintiff alleges that records falsely reflect that Dr. Baker physically examined Plaintiff, the medical records do not reflect an exam; rather, Dr. Baker merely reviewed and concurred with the prolapse diagnosis—hardly deliberate indifference.

Dr. Schmidt did see Plaintiff; he is the unidentified G.I. specialist who initially recommended the colonoscopy—again, hardly deliberate indifference.

Dr. Shah was Plaintiff's principal treating physician. He was responsible for initially sending Plaintiff to see Dr. Schmidt, and he submitted the request for a colonoscopy on two occasions (he did not disapprove the test). Dr. Schmidt recommended the colonoscopy, and it was Dr. Garcia who denied the test. After the initial test was denied, Dr. Shah ran blood and stool tests. The fact that he did not physically examine Plaintiff's rectum until September 29, 2011, is insufficient to support a deliberate indifference claim, as Dr. Shah agreed that the colonoscopy was needed and he was running down other causes, such as H. Pylori. At best, Plaintiff has alleged and shown a difference of opinion or negligence, but there is nothing upon which to base a deliberate indifference claim. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Dr. Garcia denied the colonoscopy in June 2011, but there is nothing to support a deliberate indifference claim. Dr. Garcia's initial denial was due to the need for one more medical evaluation, which is consistent with the initial plan of having another doctor review Dr. Schmidt's recommendation. Bureaucratic confusion is not deliberate indifference.

Plaintiff's proposed amended complaint adds a claim against "Jon Doe," the Regional Medical Director at Wexford Center (which the Court construes as Wexford Health

Sources, Inc., the medical provider for prison health services). It is alleged that Dr. Jon Doe, as Regional Director, is responsible for the health of inmates. Plaintiff also specifically alleges that Dr. Doe was deliberately indifferent to Plaintiff's serious medical needs by delaying Plaintiff's access to a medical specialist, failing to carry out medical orders, and falsifying medical records.

Dr. Doe, a Wexford employee, is sued in his "official capacity." A corporate defendant violates an inmate's rights if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoner. *Estate of Novack ex rel. v. Cnty. of Wood,* 226 F.3d 525, 530 (7th Cir.2000); *Woodward v. Corr. Med. Servs. of Ill. Inc.,* 368 F.3d 917, 927 (7th Cir.2004). A corporate policy "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Id*. Plaintiff alleges no such policy and the documentation submitted suggests no such policy or practice. Also, the doctrine of *respondeat superior* is not applicable to Section 1983 actions. In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). *See also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). There is no indication from the complaint or proposed additional claim that any Wexford Regional Director was in any way personally involved in any aspect of Plaintiff's medical care.

Looking at all of the documentation submitted that is linked to Wexford does not suggest a basis for a claim, either. Without reiterating the lengthy analysis already offered relative to the named defendants, the Court notes the following. On April 1, 2011, Wexford "Utilization Management" <u>approved</u> an outpatient visit for a colorectal exam by a G.I. specialist (Doc. 1-1, p. 4). Therefore, Plaintiff's documentation undercuts his assertion that there was any deliberate indifference by Wexford regarding that decision. On June 11, 2011, Wexford

Utilization Management did not approve a request for a colonoscopy due to "insufficient information" (Doc. 1-1, p. 27).  It was noted that Plaintiff had seen a G.I. specialist, and Dr. Larson was to review the request for referral for a colonoscopy (*Id*.).  A subsequent appeal was denied October 27, 2011, because Drs. Larson and Shah had deemed the colonoscopy unnecessary; they agreed that Plaintiff had a rectal prolapse (Doc. 1-1, p. 28).  However, once Plaintiff refused a resection, a colonoscopy was authorized by Wexford in December 2011 (Doc. 1-1, p. 29).  Therefore, there is nothing to suggest deliberate indifference by Wexford, or any "Dr. Jon Doe," at any time.  At best, Wexford recognized a difference in medical opinion regarding the need for a colonoscopy, but that alone does not suggest deliberate indifference.  Plaintiff fails to specify how Dr. Jon Doe falsified medical records, and there is nothing in the records submitted to suggest a basis for such a claim.  As explained above, Plaintiff's claim appears to be premised upon a clear misunderstanding of the records. Consequently, further amendment to cure the procedural defect would be pointless, since the claim itself is fatally flawed, as established by the documentary evidence attached to the complaint.

### 3.   Due Process and Equal Protection Claims

During the time Plaintiff was seeking medical treatment he filed several grievances, which were ultimately denied by Sherry Benton of the IDOC Administrative Review Board (Doc. 1-1, pp. 24, 25).  Plaintiff claims that Benton did not fully address his grievances, thereby denying him due process and equal protection.

Again, the documentation submitted by Plaintiff undercuts his claim.  On October 31, 2011, Benton addressed Plaintiff's May 23, 2011, grievance about needing treatment.  She noted that he was sent to see a specialist on June 2, 2011 (Dr. Schmidt) (Doc. 1-1, p. 25).  On May 2, 2012, Benton addressed Plaintiff's December 19, 2011, grievance regarding Dr. Shah

failing to physically examine his rectum until September 29, 2011; she noted that Plaintiff was slated to be seen by an outside specialist.

In order to establish a viable equal protection claim, Plaintiff must show that he was intentionally treated differently from others who are similarly situated, and that there is no rational basis for that difference in treatment. *LaBella Innetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 941 (7th Cir.2010). Plaintiff has failed to state an equal protection claim—he has made nothing more than a bald assertion that cannot possibly flow from his allegations and the documentation he has submitted. Plaintiff does not indicate how he was treated differently from anyone else.

Similarly, Plaintiff has also failed to state a due process claim. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir.2011). *See also Grieveson v. Anderson,* 538 F.3d 763, 772 n. 3 (7th Cir.2008); *George v. Smith,* 507 F.3d 605, 609 (7th Cir.2007); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir.1996).

  4.  Prejudice

A complaint or claim that does not satisfy Federal Rule of Civil Procedure 8 is usually dismissed without prejudice, and an opportunity to cure the defect is typically granted. *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011). "[D]istrict courts have a special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 555 (7th

Cir.1996): *Arnett,* 658 F.3d at 756. Nevertheless, if it is clear that the defects cannot be cured, an opportunity to cure the defect is not required and dismissal may be with prejudice. *Id.* (citing *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 778 (7th Cir. 2007)).

Again, given the documentation attached to the complaint, the Court can say with unusual certainty that Plaintiff's claims cannot be amended to cure the problems. Plaintiff cannot change the facts established by the documentation he has submitted. This is not a situation where a "savvy judge" thinks actual proof of the facts to support a claim is improbable. Plaintiff's own documentation dispels the probability of success on the merits of his claims (and the proposed claim against "Dr. Jon Doe"). Therefore, dismissal of all claims and this action, with prejudice is warranted.

5. <u>Conclusion</u>

For the reasons stated, Plaintiff's motion for leave to amend his complaint (Doc. 8) is **DENIED**, and all claims against all defendants are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Judgment shall enter accordingly.

Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: January 9, 2013**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**